UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAIR HOUSING JUSTICE CENTER, INC.;
KAARON BRISCOE MINEFEE; JOHN-
MARTIN GREEN; JOSHUA ROBINSON; and
SANDRA VAUGHN-COOKE,

                     Plaintiffs,

     v.

KOSOVA PROPERTIES, INC.; MULLINER &
PROPERTIES INC.; BURR PROPERTIES LLC;
DARDANIA PROPERTIES LLC; NEZAJ
REALTY LLC; and HAMDI NEZAJ,

                  Defendants.

Civ._____

**COMPLAINT**

Plaintiffs Fair Housing Justice Center, Inc. ("FHJC"); Kaaron Briscoe Minefee;

John-Martin Green; Joshua Robinson; and Sandra Vaughn-Cooke (collectively, "Plaintiffs"), by

their respective attorneys for their Complaint against Defendants Kosova Properties Inc.

("Kosova Properties"), Mulliner & Properties Inc. ("Muliner Properties"), Burr Properties LLC

("Burr Properties"), Dardania Properties LLC ("Dardania Properties"), Nezaj Realty LLC

("Nezaj Realty"), and Hamdi Nezaj (collectively, "Defendants") allege as follows:

<u>**INTRODUCTION**</u>

        1.     In open defiance of long-standing federal and city fair housing laws, the

owners of more than 250 affordable rent-stabilized apartments in 15 buildings in the Morris Park

and Pelham Bay areas of the Bronx do not rent to African Americans or to renters with public

sources of income, such as rental assistance.

        2.     When white prospective renters ask Defendant Hamdi Nezaj, the owner of

Kosova Properties, what apartments he has available to rent, he tells them what is available,

when it is available, and how to apply for the apartment.  And he makes arrangements for them to see the apartment.

3.      In stark contrast, when employed African American prospective renters or individuals with rental assistance make the same inquiry about the same apartments, Mr. Nezaj tells them nothing is available for rent, the apartment is not available to be shown, or that he refuses to rent to anyone who receives a public source of income, including New York City rental vouchers.

4.      Plaintiffs seek to end Defendants' discriminatory housing practices and remove the illegal barriers preventing New Yorkers from renting Defendants' apartments.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 28 U.S.C. § 2201, and 42 U.S.C. § 3613.  This Court has supplemental jurisdiction over the New York City law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendants are located in and conduct business in the District.

## THE PARTIES

7.      FHJC is a non-profit New York City-based organization dedicated to ensuring that all people have equal access to housing opportunities in the New York City region[1] by eliminating housing discrimination and creating open, accessible, and inclusive communities. FHJC expended staff time and other resources to identify, investigate, and respond to the Defendants' discriminatory rental practices.   These investigations diverted resources away from other FHJC activities.  Furthermore, Defendants' discriminatory rental practices frustrated

---

[1]      FHJC serves the New York counties of Suffolk, Nassau, Westchester, Dutchess, Orange, Putnam, and Rockland, as well as the five boroughs of New York City.

FHJC's mission to ensure that all people have equal access to housing opportunities in the New York City region by, among other things, making apartments for rent unavailable to African Americans because of race and color and to renters with lawful public sources of income, including rental vouchers.

8.     Kaaron Briscoe Minefee is an African American woman who resides in Brooklyn, New York and during all relevant times was employed as a tester by FHJC.  On July 16, 2015, Ms. Briscoe Minefee met with Defendant Hamdi Nezaj at 2126-30 Muliner Avenue, Bronx, New York to inquire about the availability of apartments for rent.  Upon information and belief Hamdi Nezaj is the managing agent for Kosova Properties, Muliner Properties, Burr Properties, Dardania Properties, and Nezaj Realty ("the Corporate Defendants").

9.     John-Martin Green is an African American man who resides in New York, New York and during all relevant times was employed as a tester by FHJC.  On August 25, 2015, Mr. Green met with Defendant Hamdi Nezaj at 2126-30 Muliner Avenue, Bronx, New York, to inquire about the availability of apartments for rent.

10.     Joshua Robinson is an African American man who resides in Brooklyn, New York and during all relevant times was employed as a tester by FHJC.  On December 15, 2015, Mr. Robinson met with Defendant Hamdi Nezaj at 2126-30 Muliner Avenue, Bronx, New York, to inquire about the availability of apartments for rent.

11.     Sandra Vaughn-Cooke is an African American woman who resides in Brooklyn, New York.  At all relevant times hereto, Ms. Vaughn-Cooke had a lawful source of income through the Living in Communities Rental Assistance Program.  On July 24, 2015, she spoke with Defendant Hamdi Nezaj by telephone to inquire about renting an apartment.

12.     Defendant Kosova Properties is a New York corporation with its principal place of business located in the District, at 2126-30 Muliner Avenue, Bronx, New York.  Upon information and belief, Kosova Properties managed and operated residential multi-family rental buildings owned and/or operated by Defendants Muliner Properties, Burr Properties, Dardania Properties, Nezaj Realty and Hamdi Nezaj during all times relevant to this complaint.

13.     Defendant Muliner Properties is a New York corporation with its principal place of business located in the District, at 2126-30 Muliner Avenue, Bronx, New York.  Upon information and belief, Muliner Properties is the owner of a residential rental building with 38 units located at 2126-30 Muliner Avenue, Bronx, New York during all times relevant to this complaint.

14.     Defendant Burr Properties is a New York corporation with its principal place of business located in the District, at 2126-30 Muliner Avenue, Bronx, New York.  Upon information and belief, Burr Properties is the owner of a residential rental building with 37 units located at 2023 Burr Avenue, Bronx, New York during all times relevant to this complaint.

15.     Defendant Dardania Properties is a New York corporation with its principal place of business located in the District, at 2126-30 Muliner Avenue, Bronx, New York.  Upon information and belief, Dardania Properties is the owner of a residential rental building with 32 units located at 3110-3112 Wilkinson Ave., Bronx, New York during all times relevant to this complaint. On December 2, 2013, the United States Department of Housing and Urban Development issued a charge of discrimination against Dardania Properties.  FHEO No. 02-13-0349-8.

16.     Defendant Nezaj Realty is a New York corporation with its principal place of business located in the District, at 2126-30 Muliner Avenue, Bronx, New York.  Upon

4

information and belief, Nezaj Realty is the owner of a residential rental building with 4 units located at 2884 East 194th Street, Bronx, New York during all times relevant to this complaint.

17.    Defendant Hamdi Nezaj is a white man who resides in the District.  Mr. Nezaj is the managing agent for the Corporate Defendants and refers to himself as the "landlord" or "owner" of multiple residential rental buildings located in Bronx, New York, including 2126-30 Muliner Avenue ("Muliner Avenue"), 2023 Burr Avenue ("Burr Avenue"), 3310-3112 Wilkinson Avenue ("Wilkinson Avenue") and 2884 East 194th Street ("194th Street").  On December 2, 2013, the United States Department of Housing and Urban Development issued a charge of discrimination against Mr. Nezaj.  FHEO No. 02-13-0349-8.

## FACTUAL BACKGROUND

18.    Defendant Kosova Properties manages approximately nineteen (19) residential rental buildings containing more than 285 apartments in New York, City, including buildings owned by the Corporate Defendants.  All of the buildings, except for one, are located in the Bronx and many contain rent stabilized apartments.  Kosova Properties has a rental office located in the Muliner Avenue building with a sign posted outside that states "Apartments Available. Newly renovated. Studio's1 2 3 bdrms. Pelham Parkway & Pelham Bay. No Fee." The sign contains an email address for Kosova Properties and a phone number.   Defendant Hamdi Nezaj maintains an office in the basement of Muliner Avenue from which he and other family members manage the rental buildings.

19.    The Muliner Avenue building is located in the Morris Park area of the Bronx.  The Burr Avenue, Wilkinson Avenue and 194th Street buildings are located in the Pelham Bay area of the Bronx.  African American renter households comprise less than 2% of all

renter-occupied units in both the Morris Park and Pelham Bay neighborhoods according to the American Community Survey 2006-2010 (U.S. Census)

**Fair Housing Justice Center, Inc.**

20.    Among other activities, FHJC (a) provides information to the public and other nonprofit organizations in the New York City regional area about fair housing laws, (b) provides intake counseling to individuals and organizations alleging  housing discrimination, (c) conducts testing and other investigations of alleged housing discrimination, (d) makes legal referrals to cooperating attorneys, (e) assists with the preparation and filing of administrative housing discrimination complaints, and (f) provides post-referral litigation support services. FHJC provides these services free of charge and without regard to income.

21.    FHJC also conducts testing investigations for government law enforcement agencies, provides technical assistance to nonprofit organizations engaging in fair housing enforcement activities, and engages in policy initiatives that further FHJC's mission, including the publication and dissemination of reports and educational materials.

22.    FHJC employs individuals as "testers": persons who pose as renters or homebuyers for the purpose of obtaining information about the conduct of landlords, real estate companies, agents, and others to determine whether illegal housing discrimination is taking place.

23.    During all times relevant to this Complaint, Plaintiffs Kaaron Briscoe Minefee, John-Martin Green, and Joshua Robinson were employed as testers by FHJC.  Prior to conducting the tests described below, they received training from FHJC, which included instructions on conducting tests, preparing tester report forms, and using concealed digital audio recorders during tests.

6

24.     FHJC, through three of its African-American employees, was provided untruthful information by Defendants about apartments available for inspection or rent based on race in violation of local and federal fair housing laws.

**Disparate Treatment by Defendants based on Race – July 2015**

25.     FHJC sent a white male tester to Muliner Avenue on July 15, 2015.  The tester met with Defendant Hamdi Nezaj who showed the tester a one-bedroom apartment in the basement of the building.  Mr. Nezaj told the white tester that the one-bedroom apartment was being renovated and would be available to rent at the end of the month.  Mr. Nezaj encouraged the tester to return later that day to see a second one-bedroom apartment he said was available for rent in the same building.

26.     The next day, July 16, 2015, Plaintiff Kaaron Briscoe Minefee went to Muliner Avenue to inquire about an apartment.  Ms. Briscoe Minefee met with Defendant Hamdi Nezaj outside of the building.  Mr. Nezaj told Ms. Minefee he had "no vacancies" and did not offer to show her the apartment he had shown the white male tester the day before.  When Ms. Briscoe Minefee asked Mr. Nezaj when he might have something available, Mr. Nezaj told her nothing would be available in July and he did not know if he would have anything in August.

27.     As Ms. Briscoe Minefee was leaving the property she noticed the "Apartments Available" sign and said, "Hamdi? The sign there says you are renting.  Are you renting anything right now?"  Mr. Nezaj replied, "I don't have anything.  I only rent what I have, I don't have anything."

28.     On July 28, 2015, FHJC instructed the same white male tester to telephone the number on the Kosova Properties' sign posted at Muliner Avenue and ask if the two apartments he was told about on July 15 were still available for rent.  The tester spoke with

Defendant Hamdi Nezaj on the phone who said the renovations for the apartment on the basement level were not yet finished and the apartment was still available for rent.  Mr. Nezaj also told the white tester that the apartment one flight up from the basement apartment was also still available to rent and would require at least another two weeks to finish renovations.

**Disparate Treatment by Defendants based on Race – August 2015**

29.    FHJC sent a white male tester to Muliner Avenue on August 12, 2015 to inquire about apartments for rent.  The tester met with Defendant Hamdi Nezaj who told the tester that he had several apartments available for rent by the beginning of September in multiple buildings, including one one-bedroom apartment at Muliner Avenue.  Mr. Nezaj showed the white tester the same one-bedroom basement apartment Mr. Nezaj showed to the white male tester who visited Muliner Avenue in July.

30.    FHJC sent another white male tester on August 25, 2015 to Muliner Avenue to inquire about an apartment to rent.  The tester met with Defendant Hamdi Nezaj who told the tester he had a one-bedroom apartment available for rent in the Muliner Avenue building and a two-bedroom apartment at a different building in Pelham Bay.  Mr. Nezaj showed the white tester the same one-bedroom basement apartment Mr. Nezaj showed to two previous white male testers on July 15, 2015 and August 12, 2015.  Mr. Nezaj then told the white tester that he had a second one-bedroom apartment available for rent in the Muliner Avenue building, but could not show it to him because the floor had just been sealed and was wet.  Mr. Nezaj told the tester the unit with the wet flor was Apartment 2A and that the tester could come back the next day to see it.  The tester told Mr. Nezaj that he was not interested in renting the basement apartment but might be interested in Apartment 2A.  Mr. Nezaj encouraged the tester to call if he would like to see Apartment 2A.  The white tester left Muliner Avenue just before 1:00 pm.

31.    On the same day, August 25, 2015, and approximately five minutes after the white male tester left Muliner Avenue, Plaintiff John-Martin Green arrived at Muliner Avenue.  Mr. Green met with Defendant Hamdi Nezaj and inquired about one or two-bedroom apartments for rent.  Mr. Nezaj told Mr. Green that he did not have any two bedroom apartments available for rent and did not tell him about the Pelham Bay apartment he had just described to the white male tester.  Mr. Nezaj told Mr. Green that he only had one one-bedroom apartment, Apartment 1A, available at Muliner Avenue, even though he had just told the white tester he had two one-bedroom apartments available at Muliner Avenue.  Mr. Nezaj told Mr. Green that he could not show him an apartment at Muliner Avenue because the apartment's floor was wet from being shellacked, even though he had just shown a basement one-bedroom apartment with a dry floor to the white tester.  Mr. Nezaj told Mr. Green that it would be two days before he could show the apartment.  In contrast, Mr. Nezaj told the white tester just minutes before that the apartment with the wet floor could be shown the next day.

**Disparate Treatment by Defendants based on Race – December 2015**

32.    On December 8, 2015, FHJC sent a white male tester to Muliner Avenue to inquire about an apartment to rent.  The tester met with Defendant Hamdi Nezaj who said he had a one-bedroom apartment available at a rental building located at 2023 Burr Avenue in Pelham Bay.  The tester asked if it would be possible to see the apartment and Mr. Nezaj provided him the address and directions by bus from Muliner Avenue to the Burr Avenue building.  Mr. Nezaj told the tester he would arrange for someone to meet the tester at the Burr Avenue building.

33.    The white male tester proceeded to take the bus to the Burr Avenue building.  Upon arriving at the building, the tester met with a white man who said his name was

"Lucky."  Upon information and belief, Lucky is a son of Defendant Hamdi Nezaj.   Lucky

showed the white tester a vacant recently renovated one-bedroom apartment (Apt. 6B) and a

vacant two-bedroom apartment undergoing renovation (Apt. 6D).  Lucky told the tester to return

to the Muliner Avenue office if he was interested in applying to rent either apartment.

      34.    On December 15, 2015, Plaintiff Joshua Robinson went to Muliner

Avenue to inquire about apartments for rent.  Mr. Robinson met Defendant Hamdi Nezaj outside

of the building as Mr. Nezaj was walking up an exterior flight of stairs from the basement.  After

initially seeing Mr. Robinson, Mr. Nezaj turned around and headed back down the flight of stairs

to the basement.  From the bottom of the stairs, Mr. Nezaj told Mr. Robinson that he did not have

any vacancies at Muliner Avenue, had nothing to show Mr. Robinson, and would not have any

apartments available until sometime in January.  When Mr. Robinson specifically inquired about

two-bedroom apartments, Mr. Nezaj said he only had a studio apartment available for rent.  Mr.

Robinson then asked Mr. Nezaj if he had any other buildings that might have apartments coming

available for rent.  Mr. Nezaj replied that he did not and added that not too many two-bedroom

apartments came available.  Mr. Nezaj did not tell Mr. Robinson about the two-bedroom

apartment at Burr Avenue (Apt. 6D) that was shown to the white male tester on December 8,

2015.

      35.    One day later, on December 16, 2015, FHJC sent a white male tester to

Muliner Avenue to inquire about the availability of a two-bedroom apartment to rent.  The tester

met with Defendant Hamdi Nezaj who said that he had a two-bedroom apartment available for

rent that he could show him in Pelham Bay.  The tester asked when he could see the apartment.

Upon learning that the tester did not have a car, Mr. Nezaj offered to have his son, Lucky, drive

the tester to the Burr Avenue building to see the available apartment.

36. During the car ride to the Burr Avenue building, Lucky told the white tester that his father had "been in real estate for over 50 years." When they arrived at Burr Avenue, Lucky showed the white tester the laundry room and discussed the advantages of living in Pelham Bay and near the subway station. Lucky showed the white tester Apt. 6D, the same two-bedroom apartment that Lucky showed a different white male tester on December 8, 2015. Lucky told the white tester that his father had received an application for the apartment but he was not "too fond of them" and encouraged the tester to apply. Lucky stressed that the building was "family owned and run." Lucky said that his father, Defendant Hamdi Nezaj, "goes off of hunches" when deciding whether to rent to someone.

37. Later in the afternoon of the same day, December 16, 2015, the white male tester who Lucky showed an apartment to at Burr Avenue, telephoned the office for Defendant Kosova Properties and spoke with Mr. Nezaj. The tester confirmed that he had seen Apt. 6D at the Burr Avenue building. Mr. Nezaj told the white tester the amount of rent for the apartment, that the rent included gas, and that the initial lease would be for one year.

**Disparate Treatment by Defendants based on Source of Income - 2015**

38. The Commissioner of the New York City Human Resources Administration created the Living in Communities ("LINC") Rental Assistance Program (the "LINC Program") in a joint effort with the Commissioner of the New York City Department of Homeless Services (DHS) to move people from homeless shelters to stable housing.

39. There are six versions of the LINC Program.

40. The LINC IV Program provides rental assistance to single adults and adult couples living in New York City shelters who are either over the age of 60 or who have a disability.

41.    In July 2015, Plaintiff Sandra Vaughn-Cooke had LINC IV rental assistance.  At that time, she was searching for an apartment to rent within the rent range approved for her by the LINC IV program.  FHJC staff was assisting Ms. Vaughn-Cooke with her housing search because she was having difficulty finding a landlord who would accept her rental assistance.  In July 2015, FHJC staff identified an advertisement on an internet rental search site called www.apartments.com for a studio apartment on Wilkinson Avenue at $1200 per month, within the LINC IV authorized rent range.

42.    On July 22, 2015, FHJC instructed a white female tester to call to inquire about the studio apartment advertised for $1200 per month at the Wilkinson Avenue building to see if it was still available for rent.  The telephone number in the advertisement was different from the telephone number posted on the sign at Muliner Avenue.  At the time an FHJC staff person instructed the tester to call the number in the advertisement FHJC did not know the telephone number was affiliated with any of the Defendants.

43.    The tester asked if the studio listed for $1200 on Wilkinson Avenue was available.  Defendant Hamdi Nezaj confirmed the availability of the apartment and told the tester that she would have to see the apartment and fill out the application.  He also informed the tester that there was no broker's fee because he was the owner and that his name was "Hamdi."  One of the first questions that Mr. Nezaj asked the tester was: "Are you a working person?"  After the tester confirmed that she worked, Mr. Nezaj told her that he had a one-bedroom apartment available for $1300 in another building.  During later conversations, Mr. Nezaj told the tester that the available unit was in the 194th Street building.  When the tester explained that $1300 was too expensive, Mr. Nezaj encouraged her to consider the 194th Street building unit because it was in a "good area" and since she was a woman, a safer building in a safer area would be a better idea.

12

When Mr. Nezaj asked the tester where she currently lives, the tester replied "Fordham Heights," and Mr. Nezaj commented that that was a "very shaky area."

44.    On the same day, FHJC instructed an African American female tester to call to inquire about the apartment advertised for $1200 per month at the Wilkinson Avenue building.  Mr. Nezaj told the tester the apartment was still available.  The tester asked if the landlord accepted LINC vouchers, and Mr. Nezaj answered, "No, ma'am."  Mr. Nezaj then indicated that the rent for this unit was $1300, which was more than the rent quoted in the advertisement and confirmed during his conversation with the white tester earlier on the same day.  During this conversation, the tester explained  that she was calling on behalf of her mother, who had a voucher for up to $1,265, "so 2/3 of her rent will be paid, that's guaranteed, then she pays the rest."  Mr. Nezaj responded:

> Nothing that works with the City is guaranteed anymore, ma'am, the City sometimes for a lousy battery, if the tenant takes the battery away from smoke detector, and the city goes and inspects the apartment and the battery is [sic] there, the city stops the payment.  There's nothing guaranteed with the city with any of the programs anymore.

The tester asked whether the landlord would accept the LINC voucher for any units, and Mr. Nezaj confirmed that the landlord would not accept the voucher.  Near the end of the call, when the African American tester asked for his name, instead of giving his actual name Mr. Nezaj lied by responding that his name was "John."

45.    On July 24, 2015, Plaintiff Sandra Vaughn-Cooke came to the FHJC office for additional assistance with her rental search.  FHJC staff showed Ms. Vaughn-Cooke a number of rental advertisements within the LINC program rent range, including the Wilkinson Avenue advertisement.  After seeing the advertisement, Ms. Vaughn-Cooke decided to call the number in the advertisement to inquire about a studio apartment advertised for $1200 per month

at the Wilkinson Avenue building.  When she spoke to Mr. Nezaj, she asked if she could use her

LINC IV voucher.  Mr. Nezaj told Ms. Vaughn-Cooke that they do not accept programs.  He

explained that this was because "I…I… cannot afford to go through the red tape."

46.     Later that day Ms. Vaughn-Cooke called again.  Ms. Vaughn-Cooke asked

about the procedure for applying for an apartment if she did not use her LINC voucher.  After

putting her on hold for over five minutes, Mr. Nezaj told her:

> I do not deal with programs, ma'am…. I just… I cannot deal with
> programs…. there is so much red tape.   These people, any
> program people, usually they drive you crazy… I'm not in
> situation that I want to be … in same position, that they can play
> around and drive me crazy.  I don't need that.   At my age, I don't
> need that.

Ms. Vaughn-Cooke repeated that she was thinking about not using her voucher.  She asked about

the price for the apartment in the 194th Street building.  Mr. Nezaj informed her that the price for

both the Wilkinson Avenue unit and the 194th Street building unit were the same, $1300.  Ms.

Vaughn-Cooke asked if she could make an appointment to see the apartments if she does not use

her voucher.  Mr. Nezaj responded that she should get in touch with him next week and then,

"whenever I can show you, I'll show you."

47.     As described in paragraphs 32-33 above, on December 8, 2015, FHJC sent

a white male tester to Muliner Avenue to inquire about an apartment to rent.  During that test,

Defendant Hamdi Nezaj said that, in order to rent one of his apartments, a person has to be

working and that he does not rent to people who "come with programs."

48.     As described in paragraphs 35-37 above, on December 16, 2015, FHJC

sent a white male tester to Muliner Avenue to inquire about an apartment to rent.  During that

test, Defendant Hamdi Nezaj told the tester about an available apartment only after asking

whether the tester was on any "programs" like "Section 8 welfare or SSI" and whether he and his

wife worked.  The tester was then told that every tenant in the relevant building works.  While driving to the Burr Avenue building, Defendant Nezaj's son, Lucky, told the white tester that the tenants in the building include detectives and school teachers.  Lucky then said, "I don't have no programs, you know.  I don't accept none at all.  It's run pretty tight, you know.  All our buildings are ran tight."

**Disparate Impact by Defendants based on Race – 2015**

49.     Facially neutral housing practices that have a disparate impact on the basis of race are prohibited by the Fair Housing Act and the New York City Human Rights Law unless they are necessary to achieve a legitimate business purpose that cannot be satisfied through a less discriminatory alternative practice.

50.     According to DHS data, approximately 57 percent of single adults and adult families in New York City shelters are African American.

51.     According to DHS data, approximately 10 percent of single adults and adult families in New York City shelters are white.

52.     Defendants' policy and practice of refusing to accept LINC IV vouchers is discriminatory and has an unlawful disparate impact on African Americans.

53.     The disparate impact is clear in that African Americans are more than five times as likely as whites to be excluded by Defendants' prohibition against people who have LINC IV vouchers.

54.     Defendants' refusal to accept LINC IV vouchers cannot serve a legitimate business purpose, because refusing to accept LINC IV vouchers is contrary to New York City law.

55.    Defendants' refusal to accept LINC IV vouchers is consistent with their disparate treatment based on race that is documented in paragraphs 25-37, above.

## INJURY TO PLAINTIFFS

56.    As a result of the illegal and discriminatory actions described above, Defendants have directly and substantially injured FHJC by frustrating its mission of creating communities free of segregation and unequal housing opportunities for African Americans and individuals who receive lawful public sources of income, including rental vouchers.

57.    Defendants' discriminatory conduct perpetuates residential segregation in Bronx, New York and frustrates FHJC's mission by preventing African Americans and people with lawful public sources of income from living in buildings owned and/or managed by the Defendants.

58.    FHJC has also been injured by diverting scarce resources to identify and counteract Defendants' unlawful housing practices.  Those resources could have been used to provide services, and conduct educational activities, research, and policy advocacy instead of countering Defendants' discriminatory conduct

59.    Until these violations are remedied, Defendants' illegal and discriminatory actions will continue to injure FHJC by, *inter alia*,

        a.    interfering with efforts and programs intended to bring about equality of opportunity in housing;

        b.    requiring the commitment of scarce resources, including significant staff time and funding to investigate and counter the Defendants' illegal conduct, thus diverting those resources from

other activities, such as education, outreach, counseling, and policy
advocacy; and

c.    frustrating organizational mission and goals of promoting the equal
availability of housing to all persons without regard to race, color
or lawful source of income.

60.    By reason of the foregoing, Plaintiffs Kaaron Briscoe Minefee, John-
Martin Green, and Joshua Robinson have suffered a loss of civil rights and other damages,
including emotional distress, humiliation, and embarrassment.

61.    By reason of the foregoing, Plaintiff Sandra Vaughn-Cooke has suffered a
loss of housing opportunity and other damages, including emotional distress, humiliation, and
embarrassment.

62.    Plaintiffs will cause a copy of this complaint to be served on the New
York City Commission of Human Rights and the New York City Corporation Counsel in
compliance with § 8-502(c) of the New York City Human Rights Law.

### FIRST CAUSE OF ACTION
**Fair Housing Act – § 3604(d)**
**Plaintiffs FHJC, Minefee, Green, and Robinson ONLY**

63.    Plaintiffs FHJC, Minefee, Green and Robinson repeat and reallege the
foregoing paragraphs of their Complaint as though fully set forth herein.

64.    The residential apartments contained within the buildings owned and/or
managed by Defendants Hamdi Nezaj, Kosova Properties, Muliner Properties, and Burr
Properties are "dwellings" as defined by the Fair Housing Act to include "any building, structure,
or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by
one or more families."  42 U.S.C. § 3602(b).

65.     As described above, the conduct of Defendants Hamdi Nezaj, Kosova Properties, Muliner Properties, and Burr Properties, individually or through their principal owner/agent/employee Hamdi Nezaj, constitutes representations made because of race or color that a dwelling is not available for inspection or rent when such dwelling was in fact so available, in violation of the Fair Housing Act, 42 U.S.C. § 3604(d).  This provision includes "limiting information, by word or conduct, regarding suitably priced dwellings available for inspection, sale or rental" because of race or color.  28 C.F.R. Part 100.80(b)(4).

66.     Defendants' conduct, as described above, was intentional, willful, and made in disregard for the rights of others.

67.     Plaintiffs FHJC, Minefee, Green, and Robinson are "aggrieved persons" as defined by the Fair Housing Act because they have been injured by Defendants' discriminatory housing practices.  42 U.S.C. § 3602(i).

68.     Pursuant to 42 U.S.C. § 3613(c), Plaintiffs FHJC, Minefee, Green and Robinson are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Fair Housing Act – § 3604(a)**
**Plaintiffs FHJC and Vaughn-Cooke ONLY**

69.     Plaintiffs FHJC and Vaughn-Cooke repeat and reallege the foregoing paragraphs of their Complaint as though fully set forth herein.

70.     The residential apartments contained within the buildings owned and/or managed by Defendants Hamdi Nezaj, Kosova Properties, Dardania Properties, and Nezaj Realty are "dwellings" as defined by the Fair Housing Act to include "any building, structure, or portion

thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."  42 U.S.C. § 3602(b).

71.     Defendants' acts, policies, and practices have an adverse and disproportionate impact on African Americans in New York City as compared to similarly situated whites.  This adverse and disproportionate impact is the direct result of Defendants' blanket policy of automatically refusing housing to all people who use LINC IV vouchers.

72.     Because Defendants' policy is contrary to New York City law, it cannot be necessary to serve any substantial, legitimate, nondiscriminatory interest.

73.     Defendants' acts, policies, and practices have made and continue to make housing unavailable because of race in violation of 42 U.S.C. § 3604(a).

74.     Plaintiffs FHJC and Vaughn-Cooke are "aggrieved persons" as defined by the Fair Housing Act because they have been injured by Defendants' discriminatory housing practices.  42 U.S.C. § 3602(i).

### THIRD CAUSE OF ACTION
**New York City Human Rights Law – Race Discrimination
FHJC, Minefee, Green, and Robinson ONLY**

75.     Plaintiffs repeat and reallege the foregoing paragraphs of their Complaint as though fully set forth herein.

76.     The Corporate Defendants are the owners and lessor of "housing accommodation[s]" as defined by § 8-102(10) of the New York City Human Rights Law.

77.     Defendant Hamdi Nezaj is a "managing agent" as defined by § 8-107(5)(a) of the New York City Human Rights Law.

78.     Defendants' conduct as described above constitutes an unlawful discriminatory practice to withhold a housing accommodation from any person because of race or color in violation of § 8-107(5)(a)(1) of the New York City Human Rights Law.

79.      Defendants' conduct as described above was intentional, willful, and made in disregard for the rights of others.

80.     Plaintiffs FHJC, Minefee, Green, and Robinson are "aggrieved persons," as defined in the New York City Human Rights Law, § 8-502, because they have been injured by Defendants' discriminatory housing practices.

81.     Pursuant to §§ 8-502(a) and (f) of the New York City Human Rights Law, Plaintiffs FHJC, Minefee, Green, and Robinson are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### New York City Human Rights Law – Race Discrimination
### Plaintiffs FHJC and Vaughn-Cooke ONLY

82.     Plaintiffs FHJC and Vaughn-Cooke repeat and reallege the foregoing paragraphs of their Complaint as though fully set forth herein.

83.     Defendants Hamdi Nezaj, Kosova Properties, Dardania Properties, and Nezaj Realty are the owners and lessor of "housing accommodation[s]" as defined by § 8-102(10) of the New York City Human Rights Law.

84.     Defendant Hamdi Nezaj is a "managing agent" as defined by § 8-107(5)(a) of the New York City Human Rights Law.

85.     Defendants' acts, policies, and practices have an adverse and disproportionate impact on African Americans in New York City as compared to similarly

20

situated whites.  This adverse and disproportionate impact is the direct result of Defendants'

blanket policy of automatically refusing housing to all people who use LINC IV vouchers.

86.    Because Defendants' policy is contrary to New York City law, it cannot

be necessary to serve any substantial, legitimate, nondiscriminatory interest.

87.    Defendants' acts, policies, and practices have made and continue to make

housing unavailable because of race in violation of Administrative Code of City of NY § 8-

107(5)(a)(1).

88.    Plaintiffs FHJC and Sandra Vaughn-Cooke are "aggrieved persons," as

defined in the New York City Human Rights Law, § 8-502, because they have been injured by

Defendants' discriminatory housing practices.

89.    Pursuant to §§ 8-502(a) and (f) of the New York City Human Rights Law,

Plaintiffs FHJC and Sandra Vaughn-Cooke are entitled to actual damages, punitive damages,

injunctive relief, and reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### New York City Human Rights Law – Source of Income Discrimination
### FHJC and Sandra Vaughn-Cooke ONLY

90.    Plaintiffs FHJC and Vaughn-Cooke repeat and reallege the foregoing

paragraphs of their Complaint as though fully set forth herein.

91.    Defendants Hamdi Nezaj, Kosova Properties,  Dardania Properties, and

Nezaj Realty are the owners and lessor of "housing accommodation[s]" as defined by § 8-

102(10) of the New York City Human Rights Law.

92.    Defendant Hamdi Nezaj is a "managing agent" as defined by § 8-

107(5)(a) of the New York City Human Rights Law.

93.     Defendants "ha[ve] the rights to sell, rent or lease or approve the sale, rental or lease of at least one housing accommodation within New York City that contains six or more housing units, constructed or to be constructed, or an interest therein." § 8-107(5)(o)(ii).

94.     LINC IV is a "lawful source of income" as defined by § 8-102(25) of the New York City Human Rights Law.

95.     Defendants' conduct as described above constitutes an unlawful discriminatory practice to withhold a housing accommodation from any person because of a lawful source of income in violation of §§ 8-107(5)(a)(1) and (3) of the New York City Human Rights Law.

96.     Defendants' conduct as described above was intentional, willful, and made in disregard for the rights of others.

97.     Plaintiffs FHJC and Sandra Vaughn-Cooke are "aggrieved persons," as defined in the New York City Human Rights Law, § 8-502, because they have been injured by Defendants' discriminatory housing practices.

98.     Pursuant to §§ 8-502(a) and (f) of the New York City Human Rights Law, Plaintiffs FHJC and Sandra Vaughn-Cooke are entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

(a)     Declaring that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*., and the New York City Human Rights Law, Title 8, Section 8-101 *et seq*.;

(b)    Enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation from:

    (i)    withholding housing, or otherwise making housing unavailable on the basis of race, color or source of income;

    (ii)    representing to any person that a dwelling is not available for inspection or rental when such dwelling is in fact so available, or will become available in the future, because of race, color or source of income;

    (iii)    refusing to rent to households with LINC or Section 8 or rental vouchers, Supplemental Social Security Income (SSI), and other lawful public sources of income as defined by the New York City Human Rights Law;

    (iv)    coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act; and

    (v)    aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by the New York City Human Rights Law;

(c)    Enjoining Defendants and their agents, employees, and successors, and all other persons in active concert or participation to:

    (i)    make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

    (ii)    train all management, agents, and employees on fair housing laws;

    (iii)    advertise apartments available for rent in a non-discriminatory manner, including displaying an Equal Housing Opportunity logo (or statement to

          that effect) on all print and internet advertisements and displaying in all

          offices and rental buildings appropriate fair housing law posters;

(iv)    allow monitoring of their application and rental process;

(v)    retain advertising and rental records to allow for appropriate monitoring;

(vi)    develop written procedures on rental process and fair housing policy to be

        distributed to all employees, agents, tenants, and rental applicants; and

(vii)    establish a system for testing agents and employees for unlawful

        discriminatory practices;

(d)    Awarding such damages to Plaintiff FHJC as will fully compensate for the

diversion of resources and frustration of mission caused by Defendants' unlawful

practices;

(e)    Awarding such damages to Plaintiffs Minefee, Green, Robinson and Sandra

Vaughn-Cooke as will fully compensate for any loss of rights, as well as for the

humiliation, embarrassment, and emotional distress suffered due to Defendants'

discriminatory conduct;

(f)    Awarding punitive damages to Plaintiffs;

(g)    Awarding Plaintiffs reasonable attorneys' fees, costs, and expenses incurred in

prosecuting this action; and

(h)    Granting Plaintiffs such other further relief as may be just and proper.

Dated:  May 12, 2016
        New York, New York

EMERY CELLI BRINCKERHOFF & ABADY LLP

By:  _____
        Diane L. Houk (DH-5202)
        600 Fifth Avenue, 10th Floor
        New York, New York 10020
        Telephone:  (212) 763-5000
        Facsimile:  (212) 763-5001

*Attorneys for Plaintiffs FHJC, Kaaron Briscoe Minefee,
John-Martin Green, and Joshua Robinson*

MFY LEGAL SERVICES, INC.

        Kevin M. Cremin (KC-4319)
        Shanila Ali, of counsel to
        Jeanette Zelhof, Esq.
        299 Broadway, 4th Floor
        New York, NY 10007
        Telephone:  (212) 417-3700
        Facsimile:  (212)-417-3890

*Attorneys for Plaintiff Sandra Vaughn-Cooke*